FILED
2023 Jun-30  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| | : | |
| **DANIELLE LARKIN and MIA NEUSTEIN, individually and on behalf of all persons similarly situated,** | : | **Case No.: 2:23-cv-00142-AMM** |
| | : | |
| | : | **Collective Action** |
| | : | |
| **Plaintiffs,** | : | **Jury Trial Demanded** |
| | : | |
| **v.** | : | |
| | : | |
| **UAB MEDICINE ENTERPRISE (f/k/a UAB HEALTH SYSTEM) and UAB HOSPITAL MANAGEMENT, LLC,** | : | |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFFS' OPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE

<u>**TABLE OF CONTENTS**</u>

INTRODUCTION ................................................................................1

PROCEDURAL AND FACTUAL BACKRGROUND...........................2

      A.    Plaintiffs and Collective Members Provide Nursing Services.............2

      B.    Plaintiffs and Collective Members Were Not Paid Overtime for All Hours Worked ................................................................4

ARGUMENT ...................................................................................6

I.    The Proposed Collective Should Be Conditionally Certified as Plaintiffs Have Made a Modest Showing for Purposes of Giving Notice ....................6

      A.    Plaintiffs and Collective Members Share Similar Job Duties as Each Performed Nursing Services for Defendants' Patients ...............7

      B.    Plaintiffs and Collective Members Were Victims of a Common Policy of Requiring Unpaid Off-the-Clock Work................................9

II.    The Proposed Notice and Opt-in Process Should Be Approved...................12

CONCLUSION ................................................................................15

<u>Exhibit 1</u>    Declaration of Danielle Larkin
<u>Exhibit 2</u>    Declaration of Mia Neustein
<u>Exhibit 3</u>    Declaration of Marta Dolzyk
<u>Exhibit 4</u>    Declaration Regina Oliver
<u>Exhibit 5</u>    Declaration of Ira Poole
<u>Exhibit 6</u>    Declaration of Christian Foster
<u>Exhibit 7</u>    Proposed Notice
<u>Exhibit 8</u>    Proposed Opt-In Form
<u>Exhibit 9</u>    Proposed Text-Message
<u>Exhibit 10</u>    Proposed Reminder Notice

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Anderson v. Cagle's, Inc.*,
   488 F.3d 945 (11th Cir. 2007) ................................................................9

*Anderson v. Imani Lounge, LLC*,
   No. 1:22-cv-652-RAH-KFP, 2023 WL 2816829 (M.D. Ala. Apr. 6, 2023)  14, 15

*Benion v. LeCom, Inc.*,
   No. 15-cv-14367, 2016 WL 2801562 (E.D. Mich. May 13, 2016) ....................15

*Billingsley v. Citi Trends, Inc.*,
   No. 4:12-cv-0627-KOB, 2013 WL 246115 (N.D. Ala. Jan. 23, 2013)......... 10, 11

*Blandon v. Waste Pro USA, Inc.*,
   No. 19-cv-2420-ORL78GJK, 2020 WL 9439377 (M.D. Fla. Sept. 2, 2020) ......14

*Butler v. DirectSAT USA, LLC*,
   876 F. Supp. 2d 560 (D. Md. 2012) ....................................................15

*Camp v. City of Pelham*,
   No. 2:10-cv-1270, 2012 WL 7007699 (N.D. Ala. Mar. 20, 2012) ....................12

*Campbell v. Pincher's Beach Bar Grill Inc.*,
   No. 15-cv-695-FTM99MRM, 2016 WL 3626219 (M.D. Fla. July 7, 2016) 13, 15

*Dickensheets v. Arc Marine, LLC*,
   440 F. Supp. 3d 670 (S.D. Tex. 2020)...................................................14

*Dybach v. State of Fla. Dep't of Corrections*,
   942 F.2d 1562 (11th Cir. 1991) ............................................................9

*Gelber v. Akal Sec., Inc.*,
   14 F.4th 1279 (11th Cir. 2021)...........................................................14

*Grayson v. K-Mart Corp.*,
   79 F.3d 1086 (11th Cir. 1996).........................................................7, 9

*Guy v. Casal Inst. of Nevada, LLC*,
   No. 2:13-cv-02263, 2014 WL 1899006 (D. Nev. May 12, 2014)........................14

*Hipp v. Liberty Nat'l Life Ins. Co.*,
  252 F.3d 1208 (11th Cir. 2001) ...........................................................................6, 7

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
  132 F. Supp. 3d 707 (D.S.C. 2015) .......................................................................14

*Johnsey v. BAL TK, LLC*,
  No. 2:18-cv-00643-MHH, 2019 WL 3997072 (N.D. Ala. Aug. 23, 2019) .........12

*Kiley v. MedFirst Consulting Healthcare Staffing, LLC*,
  297 F. Supp. 3d 1260 (N.D. Ala. 2018) .................................................................11

*Lindberg v. UHS of Lakeside, LLC*,
  761 F. Supp. 2d 752 (W.D. Tenn. 2011) ...............................................................13

*Manasco v. Best In Town, Inc.*,
  No. 2:21-cv-00381-JHE, 2022 WL 816469 (N.D. Ala. Mar. 17, 2022) .............12

*Martin v. Sprint/United Mgmt. Co.*,
  No. 15-cv-5237, 2016 WL 30334 & n.32 (S.D.N.Y. Jan. 4, 2016) .....................14

*McMurray v. Formel D*,
  No. 2:19-cv-00548-AMM, 2022 WL 2762709 (N.D. Ala. Mar. 30, 2022) .........12

*Mooney v. Aramco Servs. Co.*,
  54 F.3d 1207 (5th Cir. 1995) ...................................................................................6

*Morgan v. Fam. Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) ..........................................................................7, 9

*Myers v. Marietta Mem'l Hosp.*,
  201 F. Supp. 3d 884 (S.D. Ohio 2016) ..................................................................13

*Nicks v. Peco Foods, Inc.*,
  No. 7:16-cv-01057-LSC, 2018 WL 1509370 (N.D. Ala. Mar. 27, 2018) .......9, 11

*Park v. B&M Mgmt. Co., LLC*,
  No. 2:21-cv-509, 2022 WL 1516308 (M.D. Ala. May 13, 2022) .........................15

*Pearsall-Dineen v. Freedom Mortg. Corp.*,
  27 F. Supp. 3d 567 (D.N.J. 2014) ..........................................................................10

*Pearson v. Pick Up & Go Moving Int'l, Inc.*,
   No. 1:21-cv-01595-SGC, 2023 WL 2777938 (N.D. Ala. Apr. 4, 2023)..........7, 14

*Pereira v. Foot Locker, Inc.*,
   261 F.R.D. 60 (E.D. Pa. 2009) ...............................................................................11

*Reyes v. Mi Pueblo Greensprings, LLC*,
   No. 2:19-cv-01584-JHE, 2020 WL 554448 (N.D. Ala. Feb. 4, 2020)..................7

*Roberts v. TJX Cos., Inc.*,
   No. 13-cv-13142, 2017 WL 1217114 (D. Mass. Mar. 31, 2017)...........................8

*Snively v. Peak Pressure Control, LLC*,
   174 F. Supp. 3d 953 (W.D. Tex. 2016) ........................................................ 13, 14

*Syed v. M-I, L.L.C.*,
   No. 1:12-cv-1718, 2014 WL 6685966 (E.D. Cal. Nov. 26, 2014)......................14

*Troxel v. Gunite Pros, LLC*,
   No. 21-cv-0057-WSN, 2022 WL 37525 (S.D. Ala. Jan. 4, 2022) .......... 12, 14, 15

*Vasto v. Credico (USA) LLC*,
   No. 15-cv-9298 (PAE), 2016 WL 2658172 (S.D.N.Y. May 5, 2016) .................14

*Weinstein v. 440 Corp.*,
   No. 2:19-cv-105, 2019 WL 5704137 (N.D. Ga. Nov. 4, 2019) ...........................15

**Statutes**

29 U.S.C. §§ 201 .....................................................................................................1

29 U.S.C. § 216(b) ..................................................................................................2

29 U.S.C. § 255(a) .................................................................................................14

Plaintiffs Danielle Larkin and Mia Neustein (together, "Plaintiffs") respectfully move the Court to conditionally certify the proposed Collective for purposes of issuing notice, so that similarly situated employees might join this action and toll the statute of limitations on their FLSA claims.[1]

## INTRODUCTION

Plaintiffs and proposed Collective Members provided nursing services for the patients of Defendants UAB Medicine Enterprise, f/k/a UAB Health System ("UAB Medicine") and UAB Hospital Management, LLC ("UAB Management") (together, "Defendants"), at locations in and around Birmingham, Alabama. Defendants operate as joint employers of nursing personnel at Defendants' hospitals and medical facilities. Defendants essentially operate as a single entity, and work in tandem to control and/or oversee the day-to-day work of the nursing personnel. Defendants' policies and practices resulted in their failure to properly pay for "off-the-clock work" and overtime, and thereby violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). As attested in the supporting Declarations, each worker was employed by Defendants to provide nursing services for Defendants' patients, each was subjected to Defendants' common policies and practices of refusing to

---

[1] In support hereof, Plaintiffs submit sworn declarations for themselves and four other employees who have already filed opt-in consents, including: the Declaration of Danielle Larkin ("Larkin Decl.") (Ex. 1); Declaration of Mia Neustein ("Neustein Decl.") (Ex. 2); Declaration of Marta Dolzyk ("Dolzyk") (Ex. 3); Declaration Regina Oliver ("Oliver Decl.") (Ex. 4); Declaration of Ira Poole ("Poole Decl.") (Ex. 5); and Declaration of Christian Foster ("Foster Decl.") (Ex. 6).

allow and pay for meal breaks and all time worked, and each suffered damages in not receiving overtime pay for the unpaid work performed for Defendants' benefit.

Plaintiffs now move pursuant to 29 U.S.C. § 216(b), for conditional certification and issuance of notice to the following collective:

> All current and former non-exempt employees who worked more than 40 hours in a workweek and were paid by UAB Medicine Enterprise (f/k/a UAB Health System) and/or UAB Hospital Management, LLC (together, "Defendants") to perform nursing services for Defendants' patients in the United States between [*date three years prior to Order granting Conditional Certification*] and the present (the "Collective").

Conditional certification will allow for fair notice to be given to affected workers to advise them of their legal rights, allow them to efficiently seek redress and toll their FLSA claims by opting in, and promote judicial efficiency with a collective action.

## PROCEDURAL AND FACTUAL BACKRGROUND

Plaintiffs filed this action on February 6, 2023, alleging that they and similarly situated employees who performed nursing services for Defendants were not paid for their meal breaks, time spent performing planning and preparation tasks essential to their work duties, and the requisite overtime premium for all hours worked in excess of forty each workweek. *See* Dkt. 1 ("Compl."). To date, a total of six Collective Members have joined this suit (Dkt. 1, 37, 38).

### A.    Plaintiffs and Collective Members Provide Nursing Services

Defendants operate hospitals, centers, primary and urgent care clinics, emergency rooms, specialty clinics, cancer clinics and other medical facilities in

Alabama. *See* Compl. at ¶ 7. Defendants employ nursing personnel, such as Nurses, Charge Nurses, Patient Care Technicians, Medical Assistants, Emergency Department Technicians, and Patient Communications Specialists, among others, to provide nursing services for Defendants' patients.[2] *At its core, nursing services focus on day-to-day patient care, revolving around assessing and attending to patient needs, monitoring patients' vitals and condition, participating in intake and discharge procedures, assisting in patient ambulation and transportation, and facilitating scans and tests for patients.* For example, Nurses' and Charge Nurses' duties involve: checking vital signs; performing head-to-toe assessments; administering medication; transporting patients for CT scans and X-rays; preparing patients for exams and treatments; monitoring patients for side-effects and reactions; performing hourly rounds to assess patients; address pain management, and assist in bodily waste elimination needs; offering nourishment; and ensuring applicable musculoskeletal needs are met, including ambulation, range of motion, and proper positioning.[3] Similarly, Patient Care Technicians' duties include: checking vital signs; collecting specimens; assisting with medical procedures; providing activities of daily living for patients (*e.g.*, bathing, grooming, dressing, feeding); performing electrocardiogram tests; monitoring patients' glucose; and treating minor wounds.[4]

---

[2] *See* Larkin Decl. at ¶ 5; *accord* Neustein Decl. at ¶ 5.

[3] Larkin Decl. at ¶ 4; Neustein Decl. at ¶ 4; Dolzyk Decl. at ¶ 4; Oliver Decl. at ¶ 4.

[4] Poole Decl. at ¶ 4.

Medical   Assistants,   Emergency   Department   Technicians,   and   Patient Communications Specialists perform similar nursing services.[5]

On a typical day, Plaintiffs and Collective Members began their shifts by reviewing patient information and coordinating with nursing personnel from the prior shift for the hand off of patients.[6] Plaintiffs and Collective Members would then check in with patients, assess patient medical needs, and perform activities of daily living where applicable and needed.[7] Plaintiffs' and Collective Members' workload often included patients with high acuity and/or in critical condition.[8] High acuity and critical condition patients often have significant, challenging, and unpredictable needs. As such, Plaintiffs and Collective Members were all required to provide these patients with prompt, time-consuming, and ongoing care.[9] Together, Defendants' nursing personnel performed essential nursing services in the care of Defendants' patients.

### B.   Plaintiffs and Collective Members Were Not Paid Overtime for All Hours Worked

To meet Defendants' work expectations, manage the high volume of work

---

[5] *See* Larkin Decl. at ¶ 5; Neustein Decl. at ¶ 5; Foster Decl. at ¶¶ 4, 6, 7.

[6] *See* Larkin Decl. at ¶ 7; Neustein Decl. at ¶ 7; Dolzyk Decl. at ¶ 6; Oliver Decl. at ¶ 7; Poole Decl. at ¶ 6; Foster Decl. at ¶ 6.

[7] *See* Larkin Decl. at ¶ 8; Neustein Decl. at ¶ 8; Dolzyk Decl. at ¶ 7; Oliver Decl. at ¶ 7; Poole Decl. at ¶ 7; Foster Decl. at ¶ 7.

[8] *See id.*

[9] *See id.*

exacerbated by high acuity and critical condition patients, and compensate for Defendants' chronic understaffing of nursing personnel, Plaintiffs and Collective Members were routinely required to work through meal breaks.[10] Specifically, Plaintiffs and other nursing personnel were regularly precluded from taking meal breaks because they were either on the floor working with patients, charting or documenting the medical information of Defendants' patients, answering phone calls with regard to patient care, monitoring and recording vitals of Defendants' patients, and/or preparing for the flow in incoming emergency room patients.[11] Further, Plaintiffs and Collective Members were regularly left without coverage that would allow them to take meal and rest breaks.[12]

Despite Plaintiffs and nursing personnel having to routinely work through meal breaks, Defendants failed to pay Plaintiffs and nursing personnel for that time. Specifically, Defendants would automatically deduct a thirty (30) minute meal break from Plaintiffs' and Collective Members' paychecks, irrespective as to whether a break was interrupted or taken at all.[13] Plaintiffs and declarants complained, typically to no avail, to supervisors about the fact that they were not paid for meal breaks that

---

[10] *See* Larkin Decl. at ¶¶ 8-9, 11; Neustein Decl. at ¶¶ 8-9, 11; Dolyzk Decl. at ¶¶ 7-10, 12; Oliver Decl. at ¶¶ 7-10, 12; Poole Decl. at ¶¶ 7-10, 11; Foster Decl. at ¶¶ 7-11.

[11] *See* Larkin Decl. at ¶ 9; Neustein Decl. at ¶ 9; Dolzyk Decl. at ¶ 10; Oliver Decl. at ¶ 10; Poole Decl. at ¶ 8; Foster Decl. at ¶ 10.

[12] *See* Dolzyk Decl. at ¶ 9; Oliver Decl. at ¶ 9; Poole Decl. at ¶ 9; Foster Decl. at ¶ 9.

[13] *See* Larkin Decl. at ¶ 13; Neustein Decl. at ¶ 13; Dolzyk Decl. at ¶ 10; Oliver Decl. at ¶ 12; Poole Decl. at ¶ 12; Foster Decl. at ¶ 10.

were either not taken or were interrupted by patients' needs.[14]

Plaintiffs and declarants attest that the total amount of off the clock time, including time spent working through meal breaks or pre-shift tasks, that they worked to complete assignments in the care of Defendants' patients ranged from thirty minutes to one hour per day.[15] They also attest that other nursing personnel were subjected to Defendants' same pay and timekeeping practices, including failure to pay for meal breaks that were not taken and for all hours worked.[16]

## ARGUMENT

### I.   The Proposed Collective Should Be Conditionally Certified as Plaintiffs Have Made a Modest Showing for Purposes of Giving Notice

The Eleventh Circuit has sanctioned a two-stage procedure for managing an FLSA collective action in the pretrial phase. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995)). "At the first stage, a court reviews the pleadings and any affidavits on file and decides whether it should authorize notice of the action to

---

[14] *See* Larkin Decl. at ¶ 15; Dolzyk Decl. at ¶ 16; Poole Decl. at ¶ 22; Foster Decl. at ¶ 16. Plaintiff Neustein, Opt-In Plaintiff Poole, and other nursing personnel also regularly performed pre-shift work, such as sterilizing equipment and reviewing patient charts, for the benefit of Defendants' patients and were not paid for that time. Although this pre-shift work was necessary to manage Defendants' high volume of work, Defendants' policy prevented nursing personnel from clocking-in earlier than seven minutes prior to the start of the shift, thereby resulting in unpaid pre-shift work. *See* Poole Decl. at ¶¶ 17-18; *accord* Neustein Decl. at ¶ 14.

[15] Larkin Decl. at ¶ 9; Neustein Decl. at ¶ 9; Dolzyk Decl. at ¶ 14; Oliver Decl. at ¶ 14; Poole Decl. at ¶ 17; Foster Decl. at ¶ 13.

[16] Neustein Decl. at ¶ 15; Poole Decl. at ¶ 21; *accord* Larkin Decl. at ¶ 14; Dolzyk Decl. at ¶ 15; Oliver Decl. at ¶ 15; Foster Decl. at ¶ 14.

potential opt-in plaintiffs." *Pearson v. Pick Up & Go Moving Int'l, Inc.*, No. 1:21-cv-01595-SGC, 2023 WL 2777938, at *1 (N.D. Ala. Apr. 4, 2023). "The court should satisfy itself there are other employees who wish to opt into the action and that those employees are similarly situated with respect to job requirements and pay provisions." *Id.* (citing *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008)). "The Eleventh Circuit has described the standard for determining similarity at the first stage as "'not particularly stringent'" and "'fairly lenient.'" *Id.* (citing *Morgan*, 551 F.3d at 1260-61 (quoting *Hipp*, 252 F.3d at 1214, 1218)). "All that is required is that there is a 'reasonable basis' for a claim of similarity." *Id.* at 1260. "Conditional certification is the 'typical[ ]' outcome of the first stage." *Id.* As demonstrated below, Plaintiffs have undoubtedly made this modest showing.

### A. Plaintiffs and Collective Members Share Similar Job Duties as Each Performed Nursing Services for Defendants' Patients

"[T]he key to conditionally certifying a collective action is showing that there is a similarly situated group of employees, not whether the other employees hold identical positions." *Reyes v. Mi Pueblo Greensprings, LLC*, No. 2:19-cv-01584-JHE, 2020 WL 554448, at *4 (N.D. Ala. Feb. 4, 2020) (citing *Morgan*, 551 F.3d at 1259; *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

Here, the Declarations of the six Opt-In Plaintiffs demonstrate that they: (1) effectively performed the same core duties in providing nursing care for Defendants' patients; (2) worked off-the-clock by working through meal breaks; (3) rarely left

work at the time scheduled by Defendants due to patient care demand and staffing; and (4) worked overtime without receiving overtime pay via uniform policies employed by Defendants.[17] As demonstrated, these work conditions were not limited to one location, or a specific job title, but instead permeated Defendants' operations and nursing personnel, as a result of chronic understaffing throughout the system. The declarants attest to the fact that Defendants' nursing personnel performed similar nursing services, notwithstanding their specific title or work location (indeed, some of the declarants themselves worked at multiple of Defendants' departments and facilities).[18] *Accord Roberts v. TJX Cos., Inc.*, No. 13-cv-13142, 2017 WL 1217114, at *3-4 (D. Mass. Mar. 31, 2017) (granting conditional certification; job descriptions sharing the same major areas of responsibility weigh in favor of conditional certification, even if "proposed class members' job titles or duties are not exactly the same, as long as they are similar").

Here, Plaintiffs and Collective Members are sufficiently similar for notice purposes.

---

[17] *See* Larkin Decl. at ¶¶ 4, 6, 8-11; Neustein Decl. at ¶¶ 4,6, 8-11; Dolyzk Decl. at ¶¶ 4-5, 7-12; Oliver Decl. at ¶¶ 4-5, 7-12; Poole Decl. at ¶¶ 4-5, 7-15; Foster Decl. at ¶¶ 4-5, 7-11.

[18] All of the declarants worked at Defendants' facilities in or near Birmingham, which included various departments: Gynecology & Oncology Unit, Division of General Medicine and Infectious Diseases, Surgical Intensive Care Unit, COVID Intensive Care Unit, Division of Hematology and Oncology, Intensive Care Unit, and the Emergency Room. *See* Larkin Decl. at ¶ 3; Neustein Decl. at ¶ 3; Dolzyk Decl. at ¶ 3; Oliver Decl. at 3; Poole Decl. at ¶¶ 3, 7; Foster Decl. at ¶ 3.

**B.      Plaintiffs and Collective Members Were Victims of a Common Policy of Requiring Unpaid Off-the-Clock Work**

"Plaintiffs need not establish 'a unified policy, plan, or scheme of [unlawful activity] to satisfy the liberal similarly situated requirement of § 216(b).'" *Nicks v. Peco Foods, Inc.*, No. 7:16-cv-01057-LSC, 2018 WL 1509370, at *3 (N.D. Ala. Mar. 27, 2018) (quoting *Grayson*, 79 F.3d at 1096). Instead, a plaintiff meets its burden by showing a "'reasonable basis' for his claim that there are other similarly situated employees." *Id.* (quoting *Morgan*, 551 F.3d at 1260 (citations omitted)); *see also Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562 (11th Cir. 1991). Evidence of a common policy or scheme is another way to show employees opt-in interest of other employees. *Nicks*, 2018 WL 1509370, at *4 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)).

Here, UAB Management was the direct employer for the Plaintiffs and other nursing personnel, and is the entity listed on their paystubs (Compl. at ¶ 20). Plaintiffs and all other nursing personnel are subject to UAB Medicine's "Hospital Kronos Timekeeping System for recordkeeping of time and attendance, vacation and sick days for non-exempt employees, including [nursing personnel]" (*id.* at ¶¶ 22-23). UAB Management then serves as a pass-through "for processing and distributing the monthly, biweekly, and extra payroll" to nursing personnel (*id.* at ¶ 24). Plaintiffs have presented evidence of off-the-clock work and declarants have attested to employer-imposed work requirements that led to off-the-clock work.

9

Defendants uniformly required their nursing personnel to perform their medical care services in excess of forty hours per workweek without proper overtime compensation, including with regard to meal breaks. The Declarations submitted describe *de facto* policies of refusing to pay for meal breaks, whether breaks not taken were auto-deducted or breaks were illusory and interrupted with work activities. Either way, off-the-clock work was performed for Defendants' benefit without pay. The Declarations of a half dozen affected workers attest that Defendants were aware of the fact that the patient workload of nursing personnel necessitated that protocol due to chronic understaffing. It is no surprise that Defendants' notorious understaffing combined with the health and life needs of the patients being cared for routinely required nursing personnel to forego meal breaks, or to work through their breaks.

Plaintiffs and declarants here have testified to company-wide practices at UAB Medicine that have compelled off-the-clock overtime work. This, too, constitutes evidence in support of conditional certification, where company policies compelled the additional (uncompensated) work. *See, e.g.*, *Billingsley v. Citi Trends, Inc.*, No. 4:12-cv-0627-KOB, 2013 WL 246115, at *4 (N.D. Ala. Jan. 23, 2013) (conditionally certifying a collective while finding declarations of the opt-ins and plaintiffs showed that the defendant's policy or practice was a company-wide policy or practice); *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 571

(D.N.J. 2014) (granting conditional certification where plaintiffs alleged that employer "imposed 'production requirements' on [employees] that required them to work in excess of forty hours per week," and where these allegations were supported by declarations from multiple opt-in plaintiffs); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 64 (E.D. Pa. 2009) (granting conditional certification where employees alleged that their employer had an "insufficient labor budget … such that hours and overtime [were] regularly unpaid to retail employees who must work off-the-clock to perform basic job functions," and where employees supported these allegations with evidence that employees regularly punched out before finishing work). As in *Billingsley*, *Pearsall-Dineen* and *Pereira*, Plaintiffs here allege that Defendants effectively required its nursing personnel to work off-the-clock to complete necessary work and have supported these allegations with declarations from employees attesting to those facts. *Accord Kiley v. MedFirst Consulting Healthcare Staffing, LLC*, 297 F. Supp. 3d 1260, 1265 (N.D. Ala. 2018) (notwithstanding differing job titles and locations, "the submitted affidavits and pleadings indicate that the named Plaintiffs and putative opt-in plaintiffs worked under common employment policies that precluded any of them from receiving overtime pay from Defendant"); *Nicks*, 2018 WL 1509370, at *4 (allegations of defendant's conduct to

avoid paying overtime was "indicative of a common policy or scheme").[19]

Finally, since Plaintiffs filed this action, four other workers have already opted-in, and counsel is fielding requests for information from dozens of other workers. As such, "[t]here is sufficient evidence in this case to show class-wide interest in joining this lawsuit because numerous members of that class have already joined." *Manasco v. Best In Town, Inc.*, No. 2:21-cv-00381-JHE, 2022 WL 816469, at *8 (N.D. Ala. Mar. 17, 2022) (citing cases). Notice to the proposed Collective is thus proper and needed. *See McMurray v. Formel D*, No. 2:19-cv-00548-AMM, 2022 WL 2762709, at *4 (N.D. Ala. Mar. 30, 2022) (the FLSA is a "remedial statute that should be liberally construed").

## II.   The Proposed Notice and Opt-In Process Should Be Approved

It is vital that notice be issued promptly to preserve the rights of Defendants' nursing personnel. Unlike in class actions brought under Rule 23, the filing of the complaint does not toll the statute of limitations for the FLSA claims of potential plaintiffs. Instead, "[t]he statute of limitations for every putative member of the collective action is not tolled until they actually 'opt-in.'" *Camp v. City of Pelham*, No. 2:10-cv-1270, 2012 WL 7007699, at *2 (N.D. Ala. Mar. 20, 2012), *report and*

---

[19] *See also, e.g.*, *Johnsey v. BAL TK, LLC*, No. 2:18-cv-00643-MHH, 2019 WL 3997072, at *4 (N.D. Ala. Aug. 23, 2019) ("courts within this circuit have determined that evidence of a common payroll policy or scheme is sufficient to establish[ ] there [are] other employees desiring to opt in")*; Troxel v. Gunite Pros, LLC*, No. 21-cv-0057-WSN, 2022 WL 37525, at *3 (S.D. Ala. Jan. 4, 2022) (finding declarations were sufficient to show "an inference of a common plan or policy that satisfies plaintiffs' modest burden at the conditional certification stage").

*recommendation adopted*, 2013 WL 444416 (N.D. Ala. Feb. 1, 2013). The Court should order notice to be issued to all individuals who are or have been employed as nursing personnel for Defendants during the relevant period, to provide them a meaningful opportunity to understand their rights and join this litigation if they so choose. Plaintiffs propose a Notice (Ex. 7), Opt-In Form (Ex. 8), Text Notice (Ex. 9), and Reminder Notice (Ex. 10). Plaintiffs also propose to post the Notice via a dedicated case website and that Defendants post the Notice at work locations.[20]

The proposed Notice is appropriate in scope, as Plaintiffs and the similarly situated workers each performed nursing services for patients at Defendants' hospitals and medical facilities in Alabama, and were denied proper overtime pay for all hours worked, including for meal breaks. *Accord Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 886 (S.D. Ohio 2016) (conditionally certifying collective of nurses who were denied overtime pay arising from hospital's policy of automatically deducting meal-break time from their pay, combined with need for and expectation that they would often work through meal times); *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 761 (W.D. Tenn. 2011) (conditionally certifying collective where facility operator auto-deducted 30 minute meal period). The time period is also appropriate because Plaintiffs allege "willful" violations of

---

[20] *Campbell v. Pincher's Beach Bar Grill Inc.*, No. 15-cv-695-FTM99MRM, 2016 WL 3626219, at *7 (M.D. Fla. July 7, 2016) ("requests [to post notices] are routinely granted") (citations omitted); *Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 963 (W.D. Tex. 2016) ("Courts have approved physical posting as an appropriate form of notice") (collecting cases).

the FLSA, *see* Compl. at ¶¶ 56-60, resulting in an applicable limitations period of three years. 29 U.S.C. § 255(a); *accord Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1289 (11th Cir. 2021) (allegations of willfulness supports three-year time period).

Notice by mail, e-mail (Ex. 7, 8) and text message (Ex. 9) is appropriate here. *See Anderson v. Imani Lounge, LLC*, No. 1:22-cv-652-RAH-KFP, 2023 WL 2816829, at *2 (M.D. Ala. Apr. 6, 2023) (notice by mail, email, and text); *Blandon v. Waste Pro USA, Inc.*, No. 19-cv-2420-ORL78GJK, 2020 WL 9439377, at *7 (M.D. Fla. Sept. 2, 2020) (notice by email and mail); *Troxel*, 2022 WL 37525, at *6 (same).[21] To effectuate notice, the Court should order Defendants to produce a contact list of all individuals employed as nursing personnel during the relevant period.[22] Once notice has been issued, Collective Members should have a ninety-day

---

[21] Electronic notice is widely recognized as an effective method. *See*, *e.g.*, *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020) ("[F]ederal courts have already begun to recognize that our 'primary methods of communication have evolved" to include 'text messages and phone calls to cellular telephones.' In light of this reality and the overarching goal of providing potential class members the opportunity to join the case, … notice via text message in addition to other traditional notice methods will almost always be appropriate in modern society."); *accord Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015); *Martin v. Sprint/United Mgmt. Co.*, No. 15-cv-5237, 2016 WL 30334, at *16 & n.32 (S.D.N.Y. Jan. 4, 2016); *Vasto v. Credico (USA) LLC*, No. 15-cv-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016). *See also Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 962 (W.D. Tex. 2016) (notice "via email is an appropriate method of distribution"); *Guy v. Casal Inst. of Nevada, LLC*, No. 2:13-cv-02263, 2014 WL 1899006, at *7 (D. Nev. May 12, 2014) ("[e]mail is an efficient, reasonable, and low cost supplemental form of notice"); *Syed v. M-I, L.L.C.*, No. 1:12-cv-1718, 2014 WL 6685966, at *8 (E.D. Cal. Nov. 26, 2014).
[22] *See Pearson v. Pick Up & Go Moving Int'l, Inc.*, No. 1:21-cv-1595-SGC, 2023 WL 2777938, at *2 (N.D. Ala. Apr. 4, 2023) (defendants to produce "list containing the full names, job titles, last known addresses, personal e-mail addresses, telephone numbers, dates of birth, and dates of employment for all potential opt-in plaintiffs in an 'electronic readable format'").

(90) window to return a signed consent form. *See Troxel*, 2022 WL 37525, at *6 ("90-day opt-in period is fair and reasonable"). "Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012); *see also Campbell, v. Pincher's Beach Bar Grill Inc.*, 2016 WL 3626219, at *7 ("courts routinely allow for a 90 day opt-in period"); *Benion v. LeCom, Inc.*, No. 15-cv-14367, 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016) (balancing protection of potential plaintiffs with "expeditious and prudent case management …. [t]he 90-day notice period … properly strikes that balance"). A Reminder Notice (Ex. 10) should also be sent forty-five (45) days before the end of the opt-in period; a reminder is particularly appropriate in an FLSA action, where workers must opt-in. *See Anderson v. Imani Lounge, LLC*, 2023 WL 2816829, at *2; *Park v. B&M Mgmt. Co., LLC*, No. 2:21-cv-509, 2022 WL 1516308, at *1 (M.D. Ala. May 13, 2022); *Troxel v. Gunite Pros, LLC*, 2022 WL 37525, at *6; *Weinstein v. 440 Corp.*, No. 2:19-cv-105, 2019 WL 5704137, at *5 (N.D. Ga. Nov. 4, 2019).

## CONCLUSION

Plaintiffs have met their burden of demonstrating that they and the Collective Members are similarly situated, and thus conditional certification and judicial notice are warranted. Plaintiffs respectfully request that the Court grant their Motion and order that notice be issued in the forms attached hereto as Exhibits 7, 8, 9, and 10.

Dated: June 30, 2023                    Respectfully submitted,

                                        */s/ Lane L. Vines*
                                        Camille Fundora Rodriguez*
                                        Lane L. Vines*
                                        Olivia S. Lanctot (*pro hac vice forthcoming*)
                                        **BERGER MONTAGUE PC**
                                        1818 Market Street, Suite 3600
                                        Philadelphia, PA 19103
                                        Tel.: (215) 875-3000
                                        crodriguez@bm.net
                                        lvines@bm.net
                                        olanctot@bm.net

                                        M. Clay Ragsdale (ASB-0594-E28M)
                                        Allison L. Riley (ASB-0308-A62R)
                                        **RAGSDALE LLC**
                                        517 Beacon Parkway W.
                                        Birmingham, AL 35209
                                        Tel.: (205) 290-6800
                                        clay@ragsdalellc.com
                                        allison@ragsdalellc.com

                                        *Attorneys for Plaintiffs and the*
                                        *Proposed Collective*

                                        * Admitted *pro hac vice*

## <u>CERTIFICATE OF CONFERENCE</u>

In accord with the Court's Initial Order Governing All Further Proceedings (Dkt. 18, at § V.A.), Defendants' counsel has advised that Defendants intend to oppose the foregoing motion, which has been so noted in the title of the motion.

Dated: June 30, 2023                    */s/ Lane L. Vines*
                                        Lane L. Vines

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 30, 2023, I caused the foregoing document to be served on all counsel of record via the Court's electronic filing system.

                                        */s/ Lane L. Vines*
                                        Lane L. Vines