# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DANIELLE LARKIN, and MIA NEUSTEIN,** *individually and on behalf of all persons similarly situated*, | )<br>)<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) **Case No.: 2:23-cv-142-AMM**<br>)<br>) |
| **UAB MEDICINE ENTERPRISE,** *formerly known as* UAB Health System, **and UAB HOSPITAL MANAGEMENT LLC,** | )<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

# **ORDER**

This case comes before the court on a motion to dismiss by Defendant UAB Medicine Enterprise, formerly known as UAB Health System ("UAB Medicine") and Defendant UAB Hospital Management, LLC ("UAB Hospital Management") (collectively, "the Defendants"). Doc. 25. For the reasons explained below, the motion is **DENIED**.

Because the court delayed entering a briefing schedule on the motion for conditional collective action certification until the court ruled on the motion to dismiss, *see* Doc. 41, the court **ENTERS** a briefing schedule on the motion for conditional collective action certification at the conclusion of this order.

I.      BACKGROUND

Plaintiffs Danielle Larkin and Mia Neustein filed their putative collective action complaint on behalf of themselves and all others similarly situated. *See generally* Doc. 1. These are the facts alleged by Ms. Larkin and Ms. Neustein:

Ms. Larkin and Ms. Neustein were nurses and former employees of the Defendants. *Id*. ¶¶ 5–6. "During her employment . . . , [Ms.] Larkin typically worked at least three (3) twelve and a half (12.5) hour night shifts that began at 7:00 p.m. and ended at 7:30 a.m. the following day, during each workweek." *Id*. ¶ 31. "During portions of her employment . . . , [Ms.] Neustein typically worked at least three (3) twelve and a half (12.5) hour day shifts that began at 7:30 a.m. and ended at 8:00 p.m. the same day, during each workweek." *Id*. ¶ 32.

Ms. Larkin and Ms. Neustein assert that the Defendants suffered from "chronic understaffing," which understaffing required Ms. Larkin and Ms. Neustein to work more than forty hours in a workweek. *Id*. ¶ 34. Ms. Larkin and Ms. Neustein further allege that they "were routinely forced to work through their meal break." *Id*. ¶ 36. "Additionally," Ms. Larkin and Ms. Neustein allege that they "rarely left their shift at the time that [the] Defendants scheduled for them to leave[] and often stayed late to give report[s], finish tasks, or assist [the] night shift with medical emergencies." *Id*. ¶ 35.

Ms. Larkin and Ms. Neustein assert that the Defendants did not pay them "for

all hours worked in excess of forty (40) hours in a workweek and did not pay proper overtime premiums." *Id.* ¶ 38. Ms. Larkin and Ms. Neustein further assert that they "routinely worked through meal breaks without proper compensation." *Id.* ¶ 39.

Ms. Larkin and Ms. Neustein allege that their experience was not unique. *See generally* Doc. 1. They allege that they personally observed other nurses "working similar overtime hours" and "work[ing] through their meal break" without appropriate compensation. *Id.* ¶¶ 34, 36, 38, 43. Ms. Larkin and Ms. Neustein assert that the Defendants' compensation practices violate the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, ("the FLSA") and that the Defendants' violated the FLSA willfully. *See generally* Doc. 1.

Ms. Larkin and Ms. Neustein assert that the Defendants are joint employers. *Id.* ¶¶ 17–29. To support this assertion, Ms. Larkin and Ms. Neustein reference the internal overlap between the Defendants, such as shared payment practices. *Id.* ¶¶ 20–29. Ms. Larkin and Ms. Neustein also reference the external perception that these two entities are one-and-the-same based on their shared facilities and websites. *Id.* ¶¶ 17–19.

The Defendants moved to dismiss. Doc. 25. The motion is fully briefed. *Id.*; Doc. 29; Doc. 33.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

"The Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the United States . . . ." U.S. Const. amend. XI. "An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction." *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1294 (11th Cir. 2023) (cleaned up).

"Attacks on subject matter jurisdiction under" Rule 12(b)(1) of the Federal Rules of Civil Procedure "come in two forms." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id*. at 1529 (cleaned up). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id*. (cleaned up).

An immunity-based challenge to a court's subject matter jurisdiction is a factual attack. *See id*. "[W]hen the attack is factual, . . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. (cleaned up). "In short, no presumptive truthfulness attaches to plaintiff's

4

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*. (cleaned up).

### B. Rule 12(b)(6)

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not make "detailed factual allegations;" its purpose is only to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* To test the complaint, the court discards any "conclusory allegations," takes the facts alleged as true, *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018), and "draw[s] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### III. ANALYSIS

UAB Hospital Management asserts that it is entitled to Eleventh Amendment immunity. Doc. 25 at 6. Because Eleventh Amendment immunity implicates the

power of this court to hear this case, *see Lawrence*, 919 F.2d at 1528–29, the court considers this issue first.

### A. Eleventh Amendment Immunity

"Absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Odebrecht Constr., Inc. v. Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) (cleaned up). This constitutional prohibition encompasses suits "brought in federal court when the State itself is sued and when an arm of the state is sued." *Myrick*, 69 F.4th at 1294 (cleaned up).

"Congress did not lift the sovereign immunity of the States under the FLSA . . . ." *Emps. of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 285 (1973); *accord Powell v. Florida*, 132 F.3d 677, 678 (11th Cir. 1998). And Alabama has not waived its immunity for FLSA cases. *See generally* Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). Accordingly, the claims of Ms. Larkin and Ms. Neustein against UAB Hospital Management are barred by the Eleventh Amendment if UAB Hospital Management is an arm of the State of Alabama.

"Whether [UAB Hospital Management] is an arm of the state for Eleventh Amendment purposes is a question of federal law, but that federal question can only be answered by considering provisions of state law." *Myrick*, 69 F.4th at 1294

(cleaned up). "[B]ecause states have extremely wide latitude in determining their forms of government and how state functions are performed," federal courts give great "significan[ce]" to "how the [Alabama] Supreme Court has treated [UAB Hospital Management] in [Alabama] and interpreted the provisions of [Alabama] law in issue." *Manders v. Lee*, 338 F.3d 1304, 1309 n.10 (11th Cir. 2003) (en banc).

UAB Hospital Management asserts that it is an Alabama limited liability company. Doc. 25 at 2; Doc. 25-1 ¶ 5. UAB Hospital Management further asserts that its sole member is The University of Alabama at Birmingham. Doc. 25 at 2; Doc. 25-1 ¶¶ 1, 5. The University of Alabama at Birmingham "owns and operates" an "inpatient academic medical center." Doc. 25-1 ¶ 3. UAB Hospital Management asserts that it is responsible for hiring all nursing personnel for the medical center owned and operated by The University of Alabama at Birmingham. Doc. 25 at 3; Doc. 25-1 ¶¶ 3, 6.

"In a number of cases th[e Alabama Supreme] Court has held that a [s]tate university is entitled to [sovereign] immunity in relation to a public hospital that is part of a college of medicine within the university." *Health Care Auth. for Baptist Health v. Davis*, 158 So. 3d 397, 404 n.5 (Ala. 2013). "The hospitals in those cases . . . were owned and operated directly by the universities as part of their operations." *Id*. (emphasis omitted) (collecting cases). "The hospitals, in turn, were simply a component part of these universities." *Id*.

If Ms. Larkin and Ms. Neustein named The University of Alabama at Birmingham or its associated medical center as defendants, the result would be clear: both entities are arms of the State of Alabama and any claims against these entities are barred by the Eleventh Amendment. *See id*. Here, the question is whether the immunity those entities receive extends to UAB Hospital Management—despite its distinct corporate form—because The University of Alabama at Birmingham is its sole member. Doc. 25 at 6–7; *accord* Doc. 25-1 ¶¶ 1, 5.

Not all entities that perform functions at university hospitals are an arm of the State of Alabama. *See*, *e.g.*, *Liberty Nat'l Life Ins. Co. v. Univ. of Ala. Health Servs. Found., P.C.*, 881 So. 2d 1013, 1028 (Ala. 2003). In *Liberty National Life Insurance Co.*, the court acknowledged that "[t]he UAB Health Services Foundation is a nonprofit, independent professional corporation that, in part, attends to the billing for UAB Hospital[]" and observed that the parties' briefing did "not state what type of entity UAB Health System is or the purpose it serves." *Id*. The court "conclude[d] that because the UAB Health Services Foundation and the UAB Health System are entities separate and distinct from UAB Hospital and ha[d] not been shown to qualify for sovereign immunity, they [we]re not protected by that doctrine." *Id*.

UAB Hospital Management asserts that its "distinct corporate" form "is of no consequence" and relies on *USA Hospitals v. Kemp* for this proposition. Doc. 25 at 6–7 (quoting No. cv-15-0332-WD-M, 2016 WL 1642667, *2 (S.D. Ala. Apr. 25,

2016)). But *USA Hospitals* does not answer the question before the court.

In *USA Hospitals*, a defendant removed the case to a district court in this Circuit based on diversity jurisdiction. 2016 WL 1642667, at *1. USA Hospitals "assert[ed] that it [wa]s not a citizen of Alabama" and instead was an arm of the State, itself. *Id*. The defendant responded "that, by creating and funding a limited liability company to conduct most of its management, operations, and employment affairs, [USA Hospitals] changed its character as separate and distinct from the State and extended itself beyond its alter-ego status." *Id*. *2 (cleaned up).

The district court first observed that because "[t]he only member of" USA Hospitals was a state entity, the creation of the limited liability company "could not have divorced" USA Hospitals from the state entity. *Id*. However, the district court concluded that "[i]t [wa]s unnecessary . . . to definitively resolve whether [USA Hospitals] part[ook] of Eleventh Amendment immunity . . . and the parties' cursory presentation ma[d]e[] the [c]ourt hesitant to do so." *Id*. at *2. The district court instead held that the removing party, "who b[ore] the burden" of establishing the court's jurisdiction, "ha[d] failed to carry it." *Id.* And "the [c]ourt's considerable doubts about its jurisdiction [we]re sufficient to require remand." *Id*.

*USA Hospitals* stands for the proposition that the party invoking federal jurisdiction bears the burden of establishing it and that doubts about jurisdiction require remand—a legal principle that is not at issue here. *Compare id*. at *2, *with*

Doc. 25. The court will not dismiss the claims of Ms. Larkin and Ms. Neustein based on observations that were the product of "cursory" briefing. *USA Hospitals*, 2016 WL 1642667, at *2. The court is particularly hesitant to do so when such observations come from authority that is neither from the Eleventh Circuit nor from the Alabama Supreme Court. *See Manders*, 338 F.3d at 1309 n.10 (describing the significance of state-court precedent in the Eleventh Amendment analysis).

Federal courts "consider four factors in determining whether an entity is an arm of the state: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Myrick*, 69 F.4th at 1294. UAB Hospital Management did not discuss any of these factors in its brief, which omission prevents this court from performing the Eleventh Amendment analysis required by controlling precedent. *Compare id*. at 1294–96, *with* Doc. 25; *see also Manders*, 338 F.3d at 1308–28 (described in *Myrick* as the seminal case for Eleventh Amendment analysis).

"As the . . . entity invoking the Eleventh Amendment, [UAB Hospital Management] bears the burden of demonstrating that it qualified as an arm of the state entitled to share in its immunity." *Haven v. Bd. of Trustees of Three Rivers Reg'l Libr. Sys.*, 625 F. App'x 929, 933 (11th Cir. 2015) (cleaned up) (collecting cases). UAB Hospital Management has not carried its burden, so the motion is

**DENIED WITHOUT PREJUDICE** to the opportunity of UAB Hospital Management to renew its argument at an appropriate time.

### B. Whether Ms. Larkin and Ms. Neustein Have Stated A Claim For Relief

UAB Medicine asserts that Ms. Larkin and Ms. Neustein "have failed to state a claim for which relief may be granted" because they "assume without showing that" UAB Medicine and UAB Hospital Management are joint employers. Doc. 25 at 7 (emphasis omitted). The court disagrees, *see* Doc. 1 ¶¶ 17–29, and accordingly, the motion to dismiss is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, the motion by the Defendants is **DENIED**. The court **ENTERS** a revised briefing schedule on the motion for conditional collective action certification, *see* Doc. 39: Any response is due within **FOURTEEN (14) DAYS** of the issuance of this order. Any reply is due within **SEVEN (7) DAYS** of any response.

**DONE** and **ORDERED** this 2nd day of August, 2023.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

11